# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9857 | **DATE** | 9/23/2002 |
| **CASE TITLE** | Valerie Dierlam vs. Wesley Jessen Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's Motion to Strike is DENIED. Defendant's Motion for Summary Judgment is GRANTED AS TO Counts II and III and DENIED as to Count I. Plaintiff's Cross-Motion for Summary Judgment is GRANTED as to Count I and DENIED as to Counts II and III. Judgment is entered in Plaintiff's favor on Count I in the amount of $8,407.70, plus interest, reasonable attorney's fees and costs as allowed.

(11) ■ [For further detail see order attached to the original minute order.]

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

VALERIE DIERLAM,

        Plaintiff,

v.

WESLEY JESSEN CORPORATION,
d/b/a/ CIBA VISION,

        Defendant.

Case No. 01 C 9857

Hon. Harry D. Leinenweber

DOCKETED
SEP 2 4 2002

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Cross-Motions for Summary Judgment and Plaintiff's Motion to Strike portions of Defendant's submissions in support of its Motion for Summary Judgment.

### BACKGROUND

The operative facts of this case are not in dispute. In May 1997, Defendant Wesley Jessen Corporation ("Wesley") hired Plaintiff Valerie Dierlam ("Dierlam"). In 2000, Wesley was acquired by Novartis AG, the owner of CIBA Vision. As is common in these situations, certain Wesley employees were offered a "stay bonus" as an incentive for them to continue to perform their previous job functions during the transition period. The terms and conditions for Dierlam's stay bonus were set forth in an Employment Transition Agreement (the "ETA"). Of interest here is the ETA's provision that the "employee shall be eligible to receive a lump sum payment of 50% of employee's current annual base salary as of



the Effective Date (November 1, 2000) provided that (a) the employee remains employed and actively working for the Company as of September 30, 2001." So, if Dierlam remained "actively employed" by Wesley until September 30, 2001, she was entitled to a one-time bonus of $30,027.50 (50% of her annual base salary as of November 1, 2000).

On or about May 7, 2001, Dierlam requested and was granted twelve weeks of unpaid family leave for the adoption of a child under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. (the "FMLA"). Wesley does not dispute that, up to the point of her FMLA leave, Dierlam had remained actively employed by Wesley for purposes of her stay bonus. Wesley maintains, however, that during Dierlam's FMLA leave, she was not "actively employed" for purposes of the bonus. Accordingly, Wesley informed Dierlam that her stay bonus would be prorated and reduced by $8,407.70 to reflect her twelve-week FMLA leave. Although the ETA has no provision for prorating or reducing bonuses, Wesley nonetheless believed this to be an appropriate action under the agreement as the alternative would have been to find that Dierlam had not met the requirements of the ETA and was therefore entitled to none of the stay bonus. After her leave, Dierlam returned to Wesley and remained actively employed there for the remaining term of her ETA.

On November 1, 2001, Dierlam signed a "Confidential Separation Agreement and General Release" (the "Separation Agreement").

Paragraph Nine of the Separation Agreement contains a release clause which reads as follows:

> Employee agrees that this release of claims is intended to be broadly construed so as to resolve any pending and potential disputes between Employee and the Company as of the Effective Date . . . including but not limited to, claims based on express or implied contract . . . the Employee Retirement Income Security Act (29 U.S.C. § 1001), [and] the Family Medical Leave Act (29 U.S.C. § 1651) . . . provided that this Agreement is not intended to prohibit Employee from filing any charge or complaint with, or participating in any investigation or proceeding conducted by, the Equal Employment Opportunity Commission or from pursuing claims for any employee benefit vested and accrued in Employee's favor as of the Termination Date.

On December 6, 2001, Dierlam filed the instant lawsuit alleging that the reduction of her stay bonus violated the FMLA. Wesley moved to dismiss the complaint based on Dierlam's waiver of FMLA rights contained in the Separation Agreement. On March 8, 2002, the Motion to Dismiss was converted into a Motion for Summary Judgment and the parties were allowed to conduct limited discovery and to file the appropriate Rule 56.1 submissions. On August 26, 2002, over Wesley's objection, Dierlam was allowed to file an Amended Complaint adding causes of action under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") and for breach of contract. Now before the Court are Wesley's Motion for Summary Judgment and Dierlam's Motion to Strike and Cross-Motion for Summary Judgment.

## MOTION FOR SUMMARY JUDGMENT

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001).

## DISCUSSION

### *Motion to Strike*

As an initial matter, Dierlam moves to strike numerous exhibits and statements offered in support of Wesley's Motion for Summary Judgment. Dierlam contends that these materials, which were generated in the course of settlement discussions, may not be admitted as evidence pursuant to Federal Rule of Evidence 408, and therefore may not be considered by the Court in ruling on the current motion for summary judgment. Rule 408 is not, however, an

- 4 -

absolute ban on consideration of evidence of settlement discussions; courts have routinely admitted evidence of offers or agreements to compromise for purposes of rebuttal, for purposes of impeachment, or to show a defendant's knowledge and intent. *See Bankcard America, Inc. v. Universal Bankcard Systems, Inc.*, 203 F.3d 477, 484 (7th Cir. 2000). The documents will be considered by the Court for the limited purpose of determining Wesley's knowledge and intent in reducing Dierlam's bonus. The Plaintiff's Motion to Strike is therefore denied.

### *Motions for Summary Judgment*

### *Count I - FMLA*

Wesley contends that the FMLA claim contained in Count I must be dismissed because Dierlam unequivocally waived her right to pursue FMLA claims in her Separation Agreement. Dierlam counters that the waiver of FMLA rights obtained by Wesley in the Separation Agreement is itself a violation of the FMLA and unenforceable as a matter of law. The pertinent FMLA regulation states that "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d).

After a lengthy search, it appears that the scope and application of this regulation has never been addressed by any court of this district or the Seventh Circuit. In fact, the Court could locate only one reported case addressing the interpretation of the anti-waiver provision found in 29 C.F.R. § 825.220(d). The

court in that case found there to be no reason not to accept the plain language of the regulation on its face and applied § 825.220(d) to bar enforcement of a general waiver of FMLA rights contained in a Settlement Agreement and General Release between the employer and employee. *See Bluitt v. Eval Co. of America, Inc.*, 3 F.Supp.2d 761, 763 (S.D. Tex. 1998). The court in *Bluitt* also considered and rejected the defendant's contention that the anti-waiver provision contained in § 825.220(d) is an unreasonable and impermissible agency interpretation of the FMLA under the analysis set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). This Court also holds that, under the *Chevron* standard, § 825.220(d) is a permissible construction of the FMLA and consistent with Congress' expressed intent that "it shall be unlawful for any employer to interfere with, restrain or deny the exercise of any right provided under [the FMLA]." 29 U.S.C. § 2615. The plain language of 29 C.F.R. § 825.220(d), a valid Department of Labor regulation, makes the waiver of FMLA rights contained in Dierlam's Separation Agreement unenforceable as a matter of law. The Court will therefore turn to the merits of Dierlam's FMLA claim.

The question before the Court is whether Wesley violated Dierlam's rights under the FMLA by reducing her stay bonus to reflect the three months of family leave she took under the Act. Wesley does not dispute that Dierlam fulfilled the terms of her ETA

in all other respects, or that this reduction was for any reason other than her FMLA. Surprisingly, neither party put forward much in the way of legal argument on the issue of whether a stay bonus may be reduced as a result of an employee taking FMLA leave.

The FMLA establishes two categories of protections for employees. First, the FMLA creates substantive rights and prohibits employers from denying or interfering with the exercise of those rights. 29 U.S.C. § 2615(a)(1). Second, the FMLA contains an ancillary anti-discrimination component stating that "[i]t shall unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). In certain FMLA cases, Courts have utilized the *McDonnell Douglas* burden-shifting approach. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). However, when an employee claims that an employer has failed to honor a substantive right guaranteed by the FMLA, the question before the court is far more direct: has the plaintiff established, by a preponderance of the evidence, that she is entitled to the benefit she claims. *Id.*

In the case at bar, Wesley concedes that Dierlam was a qualified employee under 29 U.S.C. § 2611(2)(A) and that she was entitled to leave pursuant to 29 U.S.C. § 2612(a)(1)(B). When Wesley granted Dierlam's request for FMLA leave, it triggered another substantive right guaranteed Dierlam by the FMLA: the

right, upon return from FMLA leave, to be restored to an equivalent position with equivalent employment benefits, pay and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1)(B). Under the Department of Labor regulations promulgated under the FMLA, Dierlam's substantive right to equivalent pay clearly extends to protect her right to certain bonuses she would otherwise be entitled to absent the taking of FMLA leave. 29 C.F.R. § 825.215(c)(2) states that:

> [m]any employers pay bonuses in different forms to employees for job-related performance such as for perfect attendance, safety . . . and exceeding production goals. Bonuses for perfect attendance and safety do not require performance by the employee but rather contemplate the absence of occurrences. To the extent an employee who takes FMLA leave had met all the requirements for . . . these bonuses before FMLA leave began, the employee is entitled to continue this entitlement upon return from FMLA leave, that is, the employee may not be disqualified for the bonus(es) for the taking of FMLA leave.

Congress did not directly address the precise question of bonuses in the FMLA. However, given the FMLA's broad mandate that the taking of FMLA leave should not result in any loss of pay or benefit to which the employee would have otherwise been entitled, § 825.215(c)(2) is a reasonable and permissible construction of the statute. While the statute certainly does not compel this construction, where the regulation is not arbitrary, capricious, or manifestly contrary to the statute, a court may not substitute its own construction of a statutory provision for a reasonable

interpretation made by the administrator of an agency. *Chevron*, 467 U.S. at 844 (1984).

Although it is a question of first impression in the Seventh Circuit (and apparently the entire federal court system), the stay bonus as applied and interpreted by Wesley is clearly analogous to a type of "perfect attendance" bonus; it does not require Dierlam to meet production goals or quality standards but simply contemplates the nonoccurrence of an event - Dierlam's absence from work. As such, § 825.215(c)(2) makes the stay bonus one for which Dierlam may not be disqualified, either partially or wholly, for the taking of FMLA leave. Moreover, it is uncontested that Dierlam was otherwise qualified for the full stay bonus apart from her absence from active employment due to her FMLA leave. Accordingly, Dierlam has met her burden of establishing, by a preponderance of the evidence, that she is entitled to the full amount of the stay bonus pursuant to her substantive FMLA right to restoration to equivalent pay and benefits. Wesley's Motion for Summary Judgment is therefore denied and Dierlam's Motion for Summary Judgment on Count I is granted. Accordingly, Dierlam is granted judgment in her favor on Count I in the amount of $8,407.70 pursuant to 29 U.S.C. § 2617(a)(1)(A)(i), interest on the amount pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), plus reasonable attorney's fees and costs pursuant to 29 U.S.C. § 2617(a)(3). The Court denies Dierlam's request for statutory liquidated damages as the Court is

satisfied that Wesley acted in good faith and had reasonable grounds for believing that its actions were not a violation of § 2615(a)(1) of the FMLA. *See* 29 U.S.C. § 2617(a)(1)(A)(iii).

### *Count II - ERISA*

In Count II, Dierlam characterizes the Employee Transition Agreement as an "employee welfare benefit plan" and contends that Wesley violated her rights under ERISA by reducing her stay bonus. The crucial question in determining whether a bonus or benefit agreement falls within ERISA's coverage is whether the plan requires an ongoing administrative program to meet the employer's obligations. *Fort Halifax Packing Co., Inc., v. Coyne*, 482 U.S. 1, 12 (1987). "The requirement of a one-time, lump-sum payment triggered by a single event, requires no administrative scheme whatsoever to meet the employer's obligation" and ERISA will not apply. *Id.* Here, Wesley simply had to check their records to determine if Dierlam had been "actively employed" for the term prescribed in the ETA and cut her a check equal to one half her annual base salary. The "minimal quantum of discretion" required to determine whether or not Dierlam qualified for her bonus is insufficient to convert the ETA into an employee welfare benefit plan falling within ERISA's coverage. *Bowles v. Quantum Chemical Co.*, 266 F.3d 622, 633 (7th Cir. 2002). Wesley's Motion for Summary Judgment on Count II is accordingly granted.

### *Count III - Breach of Contract*

Finally, Wesley moves for Summary Judgment on Dierlam's breach of contract claim, arguing that she waived her right to pursue any such claim under the terms of her Separation Agreement. Dierlam argues that she had no intention of waiving any breach of contract claim when she signed the Separation Agreement. The intention of the parties to a contract must be determined from the instrument itself, and where no ambiguity exists, construction of the instrument is a matter of law. *Farm Credit Bank v. Whitlock*, 581 N.E.2d 664, 667 (Ill. 1991). A contract may be considered ambiguous when it is capable of being understood in more than one way. *Id.* Paragraph Nine of that agreement states: "employee agrees that this release of claims is intended to be broadly construed so as to resolve any pending and potential disputes between Employee and the Company as of the Effective Date . . . including but not limited to, claims based on express or implied contract. . . ." The record is clear and it is uncontested that the issue of Dierlam's bonus reduction was a "pending and potential dispute" at the time the Separation Agreement was signed and that it blossomed into a breach of contract claim in the current action. The Court finds the release to be clear and unambiguous and will enforce the Separation Agreement as written. *See Rakowski v. Lucente*, 472 N.E.2d 791, 794 (Ill. 1984). Dierlam has not argued that the release was obtained through fraud, duress,

illegality or mistake and she has offered no other basis for the Court to hold the release invalid. The Court therefore holds that Dierlam abandoned any claim for breach of contract arising from the bonus dispute by the clear language of the release contained in the Separation Agreement. Wesley's Motion for Summary Judgment at to Count III is accordingly granted.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Strike is DENIED, Defendant's Motion for Summary Judgment is GRANTED as to Counts II and III and DENIED as to COUNT I. Plaintiff's Cross-Motion for Summary Judgment is GRANTED as to Count I and DENIED as to Counts II and III. Judgment is entered in Plaintiff's favor on Count I in the amount of $8,407.70, plus interest, reasonable attorney's fees and costs as allowed.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: September 23, 2002